UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

Bobbi S. Hendrix,

        Plaintiff,

vs.                                           Case No.  3:10-cv-664-J-MCR

Commissioner of Social Security,

        Defendant.
_____/

## **MEMORANDUM OPINION AND ORDER**[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying her application for Social Security benefits.  The Court has reviewed the record, the briefs, and the applicable law.  For the reasons set forth herein, the Commissioner's decision is **AFFIRMED.**

**I.**      **PROCEDURAL HISTORY**

Plaintiff filed an application for a period of disability and disability insurance benefits on May 10, 2006, alleging she became disabled on June 15, 2005.  (Tr. 11, 107-12, 147, 223).  The Social Security Administration denied this application initially and on reconsideration.  Plaintiff then requested and received a hearing before an Administrative Law Judge (the "ALJ").  (Tr. 19-58).  On July 22, 2008, the ALJ issued a decision finding Plaintiff was not disabled.  (Tr. 11-18).  The Appeals Counsel denied Plaintiff's request for review (Tr. 1-4), rendering the ALJ's decision final.  20 C.F.R. §§

---

        [1]The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Docs. 18, 19).

404.981, 422.210(a).  Plaintiff timely filed her Complaint in the U.S. District Court for review of the Commissioner's decision.  (Doc. 1).

## II.     NATURE OF DISABILITY CLAIM

### A.     Basis of Claimed Disability

Plaintiff alleges disability beginning on June 15, 2005 due to nerve damage neuropathy, short term memory loss, double vision, fatigue, brain aneurysm, disc injuries in the lumbar and cervical spine, pinched nerve in the back, constant pain, and depression.  (Tr. 107, 130).

### B.     Summary of Evidence Before the ALJ

Plaintiff was 37 years of age at the time of the ALJ's decision.  (Tr. 107).  Plaintiff has a high school education and past work experience as a medical coder, office manager, phone sales person, and supervisor.  (Tr. 131, 140).  Plaintiff's medical history is discussed at length in the ALJ's decision and will be summarized herein.

In June 2005, Plaintiff was evaluated by Dr. Jacob Green, M.D. for headaches, diplopia, low back pain, and paresthesias.  (Tr. 252, 255).  On June 28, 2005, an MRI of Plaintiff's lumbar spine showed mild degenerative changes.  (Tr. 252).  On July 12, 2005, Plaintiff's pain level was down.  (Tr. 249).  On July 25, 2005, Plaintiff was discharged from Dr. Green's care because her story had changed so many times, and he did not feel comfortable treating her.  (Tr. 243).

On August 19, 2005, Plaintiff was diagnosed with a brain aneurysm.  (Tr. 438).  On October 11, 2005,  Dr. Andrew Xavier, M.D. reported that Plaintiff suffered from headaches due to the procedure but responded well to Prednisone.  (Tr. 433).  On

February 3, 2006, Dr. Xavier opined Plaintiff's lumbar radiculopathy could not explain her inability to resume her work activities. (Tr. 16, 432).

Plaintiff was seen by Dr. Perry Cole, M.D. for pain management. (Tr. 615-17). Dr. Cole prescribed a spinal cord stimulator trial while maintaining Plaintiff's pain regimen of Methadone, Lyrica, and Zanaflex. (Tr. 612). On March 16, 2006, Dr. Cole noted the presentation of crepitus on palpation of Plaintiff's knees. (Tr. 609).

On May 2, 2006, an MRI of Plaintiff's cervical spine evidenced degenerative disc disease at C3-C7, with disc bulging at C3-C4, C4-C5, C5-C6, and C6-C7. (Tr. 479). On May 23, 2006, Dr. Gregory C. Keller, M.D., performed a physical examination of Plaintiff which revealed mild tenderness in the back with no spasm; sensation was intact; hip range of motion was not painful; motor strength was intact in both lower extremities; and sitting straight leg raising was negative bilaterally. (Tr. 279). On May 24, 2006, Plaintiff underwent placement of a spinal cord stimulator which was noted to be successful. (Tr. 293, 605). On July 27, 2006, Dr. Cole reported that Plaintiff was doing very well on her prescribed medical regimen. (Tr. 602).

Records from Baptist Medical Center noted Plaintiff suffered from sleep apnea, associated with underlying obesity. On September 7, 2006, Dr. Andrew M. Namen, M.D., recommended a formal variable positive airway trial, weight loss management, and smoking cessation. (Tr. 320-22, 447-54).

On September 29, 2006, Dr. Cole surgically implanted a permanent spinal cord stimulator. (Tr. 330-409). Upon post-surgical follow up, Plaintiff described lower extremity pain relief with some lumbar mechanical pain remaining. (Tr. 600). On

October 5, 2006, Plaintiff reported excellent pain relief in the lower extremity and a nerve conduction study of the upper extremities showed no evidence of neuropathy and no radiculopathy. (Tr. 592-93, 600).

On October 12, 2006, Plaintiff presented to the emergency room complaining of neck pain with cervical radiculopathy. (Tr. 410-16, 479). Plaintiff was referred to Dr. Sean C. Orr, M.D., for a neurological consultation. Dr. Orr's initial impression included demyelinating disorder, encephalopathy, peripheral neuropathy, and hypothyroidism. A November 13, 2006 EMG and Nerve Conduction Study of Plaintiff's upper extremities were suggestive of right mild carpal tunnel syndrome. (Tr. 592).

On March 15, 2007, Dr. Hung V. Tran, M.D., examined Plaintiff and observed she was well developed and well nourished; she was in no acute distress; and she had no difficulty getting in and out of the examining room table and chair. (Tr. 509). Examination of the lumbar spine revealed some pain and loss of motion, but no evidence of paraspinal muscle spasm; there was no atrophy of the lower extremities; sitting and supine straight leg raising was normal bilaterally; squatting was normal with pain in the back; Plaintiff did not require an assistive device; and no neurological abnormalities were noted. (Tr. 510). Dr. Tran did not assess any functional limitations. (Tr. 511).

In September 2007, Dr. Cole completed a Physical Capacities Evaluation of Plaintiff in which he opined Plaintiff was capable of less than a full range of sedentary work, including that she could sit less than one hour, and stand/walk less than one hour. (Tr. 582-83). However, on January 18, 2008 and March 27, 2008, Plaintiff reported she

was doing well on her prescribed medication regimen and her spinal cord stimulator continued to function well. (Tr. 627-30).

## C. **Summary of the ALJ's Decision**

A plaintiff is entitled to disability benefits when she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months. 20 C.F.R. § 404.1505. The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. § 404.1520. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287 n. 5 (1987).

In the instant case, at step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since June 15, 2005, the alleged onset date. (Tr. 13). At step two, the ALJ found Plaintiff suffered from the following severe impairments: history of intracranial aneurysm, with stent and coiling, degenerative disc disease, cervical spine, and degenerative disc disease, lumbar spine with left lower extremity radiculopathy. (Tr. 13-14). At step three, the ALJ determined Plaintiff did not have an impairment, or any combination thereof, which met or equaled any of the impairments listed in Appendix 1, Subpart P of Regulation No. 4. (Tr. 15). At step four, the ALJ determined Plaintiff retained the residual functional capacity ("RFC")[2] to perform sedentary work,[3] except she should avoid work at heights and work with extreme cold or vibration. Additionally, Plaintiff may occasionally climb, balance, stoop, kneel, crouch, and crawl. (Tr. 15-17).

At the hearing, the ALJ utilized the testimony of a vocational expert (the "VE"). The ALJ posed hypothetical questions to the VE that included Plaintiff's symptoms and their resulting limitations. Based on the hypothetical questions posed, the VE testified that Plaintiff is capable of performing her past relevant work as a coding filing clerk and

---

[2]The residual functional capacity is the most an individual can do despite the combined effect of all of their credible limitations. 20 C.F.R. § 404.1545. The residual functional capacity is based on all of the relevant evidence in the case record, and is assessed at step four of the sequential evaluation. Id.

[3]"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

supervisor, production clerks.  Therefore, the ALJ found Plaintiff was not under a "disability," as defined in the Social Security Act.  (Tr. 17).

## III.     ANALYSIS

### A.     The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence.  Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837

(11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### B.     Issues on Appeal

Plaintiff presents three issues on appeal: (1) whether the ALJ properly considered Plaintiff's impairments in combination (Doc. 15, pp. 13-16); (2) whether the ALJ adequately evaluated the treating medical evidence (Doc. 15, pp. 17-18); and (3) whether the hypothetical question posed to the VE properly described Plaintiff's limitations (Doc. 15, p. 18).  The Court will address each of these issues.

### 1.     Whether the ALJ properly considered Plaintiff's impairments in combination.

Plaintiff contends that the ALJ erred at step two of the sequential evaluation process when she did not properly consider Plaintiff's obesity, diplopia, depression, bilateral knee pain, right carpal tunnel syndrome, menorrhagia, and prescription side effects as severe impairments or in combination with her severe impairments.  (Doc. 15, pp. 13-16).  In response, the Commissioner argues the ALJ did not commit any error at step two because she properly found Plaintiff had a combination of severe impairments (a history of intracranial aneurysm with stent and coiling, degenerative disc disease of the cervical spine, and degenerative disc disease of the lumbar spine with left lower extremity radiculopathy) and moved on to the next step in the evaluation, which is all that is required at step two.  (Doc. 21, pp. 4-8).

A condition is relevant only to the extent it limits the claimant's ability to work. See Moore v. Barnhart, 405 F.3d 1208, 1213 n. 6 (11th Cir. 2005); see also Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis [of a condition], of

-8-

course, says nothing about the severity of the condition").  Here, after reviewing the evidence, the ALJ found that Plaintiff's severe and nonsevere impairments limited her to sedentary work with additional environmental and postural limitations.  (Tr. 13-15).  In making this finding, the ALJ noted that she considered all of Plaintiff's symptoms and the extent to which they could reasonably be accepted as consistent with the evidence.  (Tr. 13-15).

In her decision, the ALJ noted that Plaintiff had been diagnosed with nonsevere impairments, including adjustment disorder with depressed mood and obstructive sleep apnea, but concluded that there was no evidence that these conditions limited her ability to work.  (Tr. 14).  The ALJ noted that Plaintiff's sleep apnea was controlled to the extent that it did not affect Plaintiff's ability to perform basic work activities.  (Tr. 14).  The Court agrees that although the record indicates Plaintiff was diagnosed with sleep apnea, there is no indication she was assessed with any associated functional limitations.  (Tr. 451-52, 474).

With respect to depression, the ALJ noted that Plaintiff had not sought mental health treatment or been hospitalized for mental health problems.  (Tr. 14, 508, 518).  With respect to carpal tunnel syndrome, the ALJ considered Plaintiff's mild right carpal tunnel syndrome and noted that nerve conduction studies of her right upper extremities were normal.  (Tr. 16, 543-46, 592).  The ALJ further noted that there was no evidence of neuropathy or radiculopathy and a state agency doctor opined that Plaintiff was capable of performing light work despite her mild right carpal tunnel syndrome.  (Tr. 16, 575-76, 592-93).

Additionally, the ALJ considered Plaintiff's complaints of double vision and noted that the records revealed that Plaintiff's double vision problems were "very transient" and that they lasted only a few minutes. (Tr. 15, 16, 426). With respect to sleepiness from medications, the ALJ noted that the records reveal Plaintiff was doing well with her prescribed medications and no significant side effects were reported. (Tr. 17, 591, 602, 627-31).

The ALJ was not required to discuss Plaintiff's allegations of obesity and menorrhagia as she never alleged that these impairments affected her ability to work. (Tr. 130). Indeed, Plaintiff did not claim that her weight or menorrhagia were causes of her alleged disability in the Disability Report she submitted with her application and did not indicate that any of her doctor's visits were because of problems with her weight. (Tr. 130-38). Therefore, the ALJ need not discuss these impairments. See, James v. Barnhart, No. 05-16238, 2006 WL 995363, at * 2, n. 2 (11th Cir. Apr. 17, 2006) (noting claimant did not claim during her hearing testimony that her obesity was a functional impairment).

Moreover, a severe impairment is an impairment which significantly limits a claimant's physical or mental abilities to do basic work activities. See 20 C.F.R. §§ 404.1520(c), 404.1521(a) (2010); Bridges v. Bowen, 815 F.2d 622, 625 (11th Cir. 1987). Here, Plaintiff failed to show that she suffered from a severe impairment due to obesity or menorrhagia or that these impairments affected her ability to work beyond the limitations found by the ALJ. Both impairments were rarely mentioned in the medical records, beyond stating that Plaintiff was overweight, and no physician assessed any

work related functional limitations.  (Tr. 321, 330, 448, 452, 493, 500, 557, 575-76).[4]

Therefore, the Court finds Plaintiff failed to establish that her obesity and/or menorrhagia limited her ability to perform basic work activities.  See Wind v. Barnhart, 2005 WL 1317040, at *5 (11th Cir. June 2, 2005) (holding ALJ properly concluded that claimant's obesity was nonsevere where record contained no evidence showing obesity affected claimant's ability to perform medium work-related activities)(citations omitted).

Accordingly, the Court finds the ALJ did not err at step two of the sequential evaluation process.

### 2. Whether the ALJ adequately evaluated the treating medical evidence.

Plaintiff contends that the ALJ improperly rejected the opinion of treating physician Dr. Cole.  (Doc. 15, pp. 17-18).  Specifically, Dr. Cole's opinion that Plaintiff was capable of less than a full range of sedentary work, including that she could sit less than one hour, and stand/walk less than one hour.  (Tr. 582-83).  In response, the Commissioner argues that the ALJ properly disregarded Dr. Cole's opinion because it is not supported by objective medical evidence and is inconsistent with his own treatment records.  (Doc. 21, pp. 8-13).

When considering a treating physician's testimony, the ALJ must ordinarily give substantial or considerable weight to such testimony unless good cause is shown to the contrary.  Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004); Lewis v. Callahan, 125 F.3d 1436,1440 (11th Cir. 1997); MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th

---

[4]Plaintiff cites her Body Mass Index (Doc. 15, p. 14); however, a Body Mass Index does not establish or indicate a claimant's functional limitations.  See SSR 02-01p.

Cir. 1986); see also 20 C.F.R. § 404.1527(d)(2). Such a preference is given to treating sources because such sources are likely to be best situated to provide a detailed and longitudinal picture of the medical impairments. Lewis, 125 F.3d at 1440. Furthermore, the ALJ must specify the weight given to the treating physician's opinion or reasons for giving the opinion no weight, and the failure to do so is reversible error. MacGregor, 786 F.2d at 1053. Good cause for rejecting a treating source's opinion may be found where the treating source's opinion was not bolstered by the evidence, the evidence supported a contrary finding, or the treating source's opinion was conclusory or inconsistent with his or her own medical record. Phillips, 357 F.3d at 1240-41 (citing Lewis, 125 F.3d at 1440); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987). Where the Commissioner has ignored or failed properly to refute the treating physician's testimony, such testimony, as a matter of law, must be accepted as true. MacGregor, 786 F.2d at 1053.

Here, the ALJ discredited Dr. Cole's opinion that Plaintiff was capable of less than a full range of sedentary work because it was not supported by objective medical evidence and inconsistent with his own treatment records. (Tr. 17). The ALJ noted that during the period from November 30, 2006 through May 3, 2007, Plaintiff complained of upper and lower extremity pain but Dr. Cole's treatment records contain no objective findings of a disabling impairment. (Tr. 587-91). On July 27, 2006, Dr. Cole reported that Plaintiff was doing well on her prescribed medication regimen. (Tr. 602). On October 5, 2006, Plaintiff reported excellent pain relief into the lower extremity and a nerve conduction study of the upper extremities showed no evidence of neuropathy and

-12-

no radiculopathy. (Tr. 592-93, 600). On December 28, 2006, Dr. Cole reported that Plaintiff was doing well on methadone. (Tr. 589). On January 18, 2008, Plaintiff again reported she was doing well on her prescribed medication regimen and her spinal cord stimulator continued to function well. (Tr. 630).

Additionally, other evidence of record does not support the limitations assessed by Dr. Cole. On June 28, 2005, an MRI of Plaintiff's lumbar spine showed only mild degenerative changes. (Tr. 252). On July 25, 2005, Dr. Green discharged Plaintiff from care because her story had changed so many times that he did not feel comfortable treating her. (Tr. 243). On February 3, 2006, Dr. Xavier opined that while Plaintiff had some lumbar radiculopathy, this could not explain her inability to resume her activities at work. (Tr. 16, 432). On September 14, 2006, Dr. Xavier reported that Plaintiff had done well after surgery and had not experienced any symptoms that would suggest aneurysm recurrence. (Tr. 430). On May 23, 2006, physical examination by Dr. Keller revealed mild tenderness in the back with no spasm; sensation was intact; hip range of motion was not painful; motor strength was intact in both lower extremities; and sitting straight leg raising was negative bilaterally. (Tr. 279). On September 29, 2006, it was noted that Plaintiff had normal neurological findings in the bilateral lower extremities. (Tr. 331). Additionally, an EMG and nerve conduction study of the upper extremities showed no evidence of neuropathy and no radiculopathy. (Tr. 592-93).

Moreover, on March 15, 2007, Plaintiff underwent a consultative examination performed by Dr. Tran. (Tr. 508-15). Dr. Tran observed that Plaintiff was well developed and well nourished; she was in no acute distress; and she had no difficulty

getting in and out of the examining room, table or chair. (Tr. 509). Examination of the lumbar spine revealed some pain and loss of motion, but no evidence of paraspinal muscle spasm; there was no atrophy of the lower extremities; sitting and supine straight leg raising was normal bilaterally; squatting was normal with pain in the back; Plaintiff did not require an assistive device; and no neurological abnormalities were noted. (Tr. 510). Dr. Tran did not assess any functional limitations. (Tr. 511).

In light of the foregoing, the Court finds the ALJ properly gave Dr. Cole's opinion of disability little weight as it was not supported by objective medical evidence and inconsistent with his own treatment records.

### 3.    Whether the hypothetical question posed to the VE properly described Plaintiff's limitations.

Plaintiff contends the ALJ did not rely upon a vocational hypothetical which comprehensively described Plaintiff's limitations.[5] (Doc. 15, p. 18). In response, the Commissioner contends the ALJ posed a proper hypothetical question to the VE and, therefore, appropriately relied on his testimony that Plaintiff could perform her past relevant work. (Doc. 21, pp. 13-15).

At the hearing, the VE provided the ALJ with a Work Experience Summary containing the exertional and skill level of Plaintiff's past relevant work as well as Dictionary of Occupational Titles ("DOT") section numbers. (Tr. 237). Specifically, the

---

[5]The Court notes that Plaintiff's argument in this regard contains a mere two paragraphs and has not been adequately developed. See Russell v. Astrue, 2009 U.S. Dist. LEXIS 19393 (M.D. Fla. 2009) ("[T]he plaintiff's failure to develop any argument showing that the law judge erred ... defeats her claim."); see also Rowe v. Schreiber, 139 F.3d 1381 (11th Cir. 1998) (noting that in the absence of an argument, the issue is deemed abandoned). However, the Court will address the issue.

VE indicated that Plaintiff's past relevant work as generally performed in the economy was classified as follows: coding file clerk (DOT 206.387-010) sedentary; office manager (DOT 219.362-010) light; telemarketer (DOT 299.357-014) sedentary; and supervisor, production clerks (DOT 221.137-014) sedentary. (Tr. 237). The VE then testified that the jobs of coding file clerk and supervisor, production clerks were performed in a fairly controlled work environment in terms of temperature extremes, particularly cold temperatures; they would not require the performance of any postural activities; and would not require exposure to vibration or work at heights like ladders or scaffolds. (Tr. 54-56).

Considering that the ALJ concluded that Plaintiff had the RFC for sedentary work, but needed to avoid heights and work in extreme cold or vibration, and she could occasionally climb, balance, stoop, kneel, crouch and crawl, the VE's testimony provided sufficient information for the ALJ to conclude that Plaintiff was capable of performing her past relevant work as a coding file clerk and supervisor, production clerks. Therefore, the ALJ properly relied on the VE's testimony in concluding that Plaintiff was capable of performing her past relevant work. See 20 C.F.R. § 404.1560(b)(2); McSwain v. Bowen, 814 F.2d 617, 619-20 (11th Cir. 1987).

**IV.   CONCLUSION**

Upon due consideration, the Court finds the decision of the Commissioner was decided according to proper legal standards and is supported by substantial evidence. As neither reversal nor remand is warranted in this case, and for the aforementioned reasons, the decision of the ALJ is hereby **AFFIRMED** pursuant to sentence four of 42

U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this ruling and, thereafter, to close the file.

**DONE AND ORDERED** in Chambers in Jacksonville, Florida this   22nd   day of August, 2011.

*Monte C. Richardson*

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record
Any Unrepresented Party